4700 Mueller Blvd., Suite 200
Austin, Texas 78723

HEIDI A. COUGHLIN

VIA ECF

Hon. Philip M. Halpern, U.S.D.J.
United States District Court for the

> Application denied without prejudice. According to Defendant, the parties' last meet and confer concerning any purported deficiencies in Defendant's discovery responses was in November 2025. Plaintiffs shall specify what, if any, disputes remain in light of Defendant's stated position in the joint letter, and engage in the requisite meet and confer process with Defendant, prior to renewing any discovery dispute conference request.
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
>             January 27, 2026

**Re:    *Michael Nolan et. al v. IBM*, Case No. 7:24-04653**

Your Honor:

We represent Plaintiffs in the above-referenced action. Pursuant to Rule 4(D) of the Court's Individual Practices in Civil Cases, the parties present this joint pre-motion letter to address discovery disputes and now requests a pre-motion conference.

## I.    Plaintiffs' Position on Discovery Disputes

In this action, Plaintiffs assert that each of their terminations by IBM— after decades of continuous employment at IBM—was the result of a long-standing, company-wide ageist scheme employed by IBM since at least 2010.

Fact discovery began in this case on June 30, 2025, the same date that Plaintiffs sent out their initial Requests for Production. Since that time, Plaintiffs have pursued discovery diligently and cooperatively and engaged in months of sustained, good-faith meet-and-confer efforts. IBM, by contrast, has failed to substantially complete its document production, has refused to provide basic transparency into the status and scope of its purported "rolling" production, and continues to withhold core categories of highly relevant discovery. IBM's conduct has stalled fact discovery, obstructed Plaintiffs' ability to select deponents,[1] and materially prejudiced Plaintiffs' ability to prosecute their claims.[2]

---

[1] Plaintiff has multiple outstanding requests for depositions—including Nickle LaMoreaux, Sam Ladah, and an IBM Corporate Representative—for which IBM has not provided dates.

[2] As the Court knows, Plaintiffs have also filed an Opposed Letter-Motion seeking an extension of the deadlines currently set under the Civil Case Discovery Plan and Scheduling Order. Plaintiffs were forced to file that Letter-

**Specific Discovery Deficiencies of IBM** Although IBM repeatedly claimed that documents were being produced on a "rolling basis," IBM has refused to confirm when or if its production is now complete, how much material remains outstanding, or whether additional categories of ESI are still being collected.[3] As a result, Plaintiffs have been forced to litigate in the dark and wait with bated breath as to when the next potential production could occur. As of now, IBM's production is materially deficient in the following ways:

**False Discovery Responses**. IBM provided inaccurate discovery responses by asserting that Plaintiff Cook was not part of a Resource Action[4]—which is proven false by its own documents. Relying on these inaccurate responses, IBM has refused to produce all responsive compensation and damages-related materials for Ms. Cook.[5]

**Age Data of Plaintiffs and Granite Resource Action**. Likewise, IBM has produced no age data for Plaintiff Cook, despite documentary and testimonial evidence establishing that Ms. Cook was part of Resource Action Granite.[6] As to Plaintiffs Bousquet and Nolan, IBM has limited age data to artificially narrow comparison groups that exclude the broader populations in which each Plaintiff worked.[7] IBM has similarly restricted age data relating to Resource Action Granite itself, notwithstanding IBM's own records confirming that the initiative was a *global* reduction in force spanning business units and geographies.

**Pervasive Production Defects.** Throughout its productions, IBM has obscured the substance of produced materials through excessive redactions, overuse of Attorneys' Eyes-Only designations, missing hyperlinked files, and the failure to produce all responsive Slack

---

Motion as opposed after IBM informed Plaintiffs at the close-of-business Friday, January 23, 2026 that it would not agree to an extension—a request which IBM had previously indicated it would be agreeable to.

[3] For example, IBM claimed to be "substantially" complete in early November but then made further electronic on the following dates: November 4, November 12, November 14, November 19, November 20, November 21, November 25, November 26, December 4, December 5, December 31, and January 26. IBM has yet to confirm whether the January 26, 2026 production was its last.

[4] *See* Defendant's Responses and Objections to Plaintiff Cook's Interrogatory No. 9.

[5] Defendant's Responses and Objections to Plaintiff Cook's First RFP Nos. 11-14.

[6] Defendant's Responses and Objections to Plaintiff Cook's First RFP No. 22.

[7] Defendant's Responses and Objections to Plaintiff Nolan's First RFP No. 22 and Plaintiff Bousquet's First RFP No. 22.

communications. IBM also improperly limited its searches in response to Plaintiffs' First Requests for Production by confining custodians and search terms, and it flatly refused Plaintiffs' Second Requests seeking defined search terms applied to identified custodians.[8]

**Prejudice to Plaintiffs**. IBM's ongoing discovery failures are not technical or harmless—they are profoundly prejudicial. Despite sending RFPs the *very first day* of the discovery period, Plaintiffs have been forced to wait over 6 months as IBM trickled out a select portion of documents. Plaintiffs cannot properly prepare for or take depositions without this crucial missing information and without knowing whether IBM's production is materially complete. Expert discovery and dispositive-motion preparation are likewise compromised. IBM's approach effectively allows it to control the pacing and substance of discovery through delay, contrary to the Federal Rules.

This case alleges systemic, enterprise-wide age discrimination originating at senior levels of leadership. Without complete production of executive communications, Slack data, and workforce planning materials, Plaintiffs are deprived of the very evidence necessary to test IBM's defenses and meet their burden of proof.

## II.    **IBM's Position on Discovery Disputes**

Plaintiffs do not identify a single discovery request that IBM supposedly failed to adequately respond to.  Instead, they lay out an alleged narrative that they have generally been deprived of discovery.  Plaintiffs' depiction is inaccurate.  In this four-person age discrimination case, IBM has produced approximately 33,000 pages of documents, responded to 49 interrogatories, and provided age data on individuals in the business groups of the two Plaintiffs who had been laid off.  IBM completed its initial production in September 2025 and then supplemented its production over the next several months in response to Plaintiffs' requests that IBM expand the scope of its production, which required IBM to review a significant amount of additional ESI.  The parties aligned in late October and November that Plaintiffs needed to see

---

[8] *See* IBM's Responses to Plaintiff Bousquet's 2nd RFP Nos. 5-9; IBM Responses to Plaintiff Cook's 2nd RFP Nos. 5 – 11; Responses to Plaintiff Nolan's 2nd RFP Nos. 5-12; Responses to Plaintiff Zeltzer's 2nd RFP Nos. 7-12.

what IBM produced to assess whether they had any remaining concerns with IBM's discovery responses.  But despite IBM informing opposing counsel that its supplementation was complete on December 2, 2025, Plaintiffs made no effort to meet and confer with IBM prior to sending IBM its portion of this letter at 11:24 a.m. on Sunday, January 25, the day before the discovery cutoff and asking for a response by 3:30 p.m. the following day.  IBM has repeatedly compromised and expanded the scope of its production in response to untethered demands, but IBM should not be required to produce additional, unspecified and undefined discovery.  Plaintiffs' pre-motion letter is but an attempt to prop up their discovery extension request and should be denied.

On June 30, 2025, Plaintiffs served IBM with five sets of discovery requests (123 total requests) purporting to require production of ESI across the Company over a 10-year period.  IBM agreed to produce documents that were named and conduct email searches of Plaintiffs, their managers, and the highest level executive within the groups in which Plaintiffs worked over a two-year period, a total of 10 custodians.  In August and September 2025, IBM produced about 14,000 pages of documents from that search, as well as data on the ages of those considered and selected for resource actions in the groups in which Plaintiffs Nolan and Bousquet (the two who separated in resource actions) worked.  In early September 2025, IBM—at Plaintiffs' request—expanded its ESI searches to: (a) include 20 custodians, (b) expand terms used for ESI searches; and (c) extend the timeframe to three full years, requiring review of over 20,000 documents.

On September 29, 2025, in the middle of the meet and confer process, Plaintiffs served IBM with five additional sets of discovery requests.  IBM objected on multiple grounds, including that the requests undermined the parties' discussions regarding the scope of ESI, but agreed to produce certain limited discovery. On October 27, 2025 and November 10, 2025, Plaintiffs indicated that they needed to see IBM's production to assess whether discovery disputes remained.

In October and November 2025, IBM produced an additional 18,000 pages of documents. On December 2, 2025, IBM told Plaintiffs it had completed its production of documents responsive

to Plaintiffs' requests.  After that date, IBM produced another 663 pages (just 2% of its of its overall production), largely consisting of documents IBM determined it might use in its own affirmative case, along with a handful of documents that had been identified in preparing for depositions.  At no time since December 2, 2025 have Plaintiffs told IBM that its production is deficient or that any discovery disputes remain.

Against this backdrop, Plaintiffs' vague requests for additional discovery should be denied. *First*, their request fails to comply with the local rules, which requires that the moving party must "specify and quote or set forth verbatim…each discovery request and response to which the motion is addressed."  Local Civ. Rule 37.1.  Plaintiffs identifies no such request or response. Plaintiffs also failed meet and confer with IBM as required by applicable rules.  The last time the parties conferred on IBM's purported deficiencies was on November 10, 2025, at which time Plaintiffs said they needed to review IBM's production to determine whether any deficiencies remained.

*Second*, Plaintiffs' request is late.  They had months after IBM provided them with relevant information to raise disputes, and failed to do so until the day before discovery was set to close. *Farb v. Baldwin Union Free Sch. Dist.*, No. CV05-0596(JS)(ETB), 2007 WL 1300978, at *1 (E.D.N.Y. May 4, 2007) (denying motion to compel filed on last day of discovery).

*Third*, Plaintiffs are not entitled to additional age data or ESI.  IBM has already produced significant ESI, including Slack communications.  As to age data, production of comparator information is typically limited to data regarding the plaintiff's "employing unit or work unit." *See Sundaram v. Brookhaven Nat. Lab'y, Associated Universities, Inc.*, No. CV-94-2330(TCP), 1996 WL 563829 (E.D.N.Y. Mar. 11, 1996).  IBM has already produced data showing the ages of people considered and selected for all layoffs that took place within Plaintiff Nolan and Plaintiff Bousquet's "work units" – i.e. their business groups in 2023, data for 821 people.

Sincerely,

Wright & Greenhill, P.C.

By: */s/ Heidi A. Coughlin*
       Heidi A. Coughlin

cc: All Counsel of Record (via ECF)